

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00270-CR

_____

HECTOR DELEON, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court No. 1790736

---

Before Birdwell, Womack, and Walker, JJ.
Memorandum Opinion by Justice Walker

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Hector Deleon appeals his convictions for Murder (Count One) and Unlawful Possession of a Firearm (Count Two). *See* Tex. Penal Code Ann. §§ 19.02(a)(2); 46.04(a)(1). The jury found him guilty on both counts, found the habitual offender notice "true," and assessed his punishment at 60 years' confinement on Count One and 25 years' confinement on Count Two in the Institutional Division of the Texas Department of Criminal Justice. The trial court sentenced him accordingly.

In two issues, Deleon argues that the trial court erred by (1) failing to give the jury an instruction on the defense of necessity as to Count One (Murder) and refusing to give the jury an instruction on the defense of necessity as to Count Two (Unlawful Possession of Firearm by Felon).[1] We conclude that Deleon forfeited his complaint as to Count One and that the trial court did not err in denying the instruction as to Count Two. Therefore, we affirm.

---

[1]Deleon's brief enumerates only one issue—the trial court failing to give a necessity instruction on both counts. However, because we liberally construe briefs and because the argument fleshes out his single issue, we conclude that he has fairly raised the two issues outlined herein, and we will address both of them. *See* Tex. R. App. P. 38.1(f) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included."); *Perry v. Cohen*, 272 S.W.3d 585, 587–88 (Tex. 2008) ("[W]e liberally construe issues presented to obtain a just, fair, and equitable adjudication of the rights of the litigants.").

## II. BACKGROUND

Deleon and Christopher Esparza, the deceased, met in 2008 while they were serving time in prison. Following Deleon's release from prison in 2017, he and Esparza reconnected, and they occasionally spent time together.

However, conflict arose between them in 2019 when Esparza claimed Deleon owed him money. Esparza went to Deleon's home and attempted to enter through a window, and Deleon shot Esparza several times. Deleon was arrested for Aggravated Assault with a Deadly Weapon and later released on bond. Esparza threatened Deleon on multiple occasions. In response, Deleon began regularly carrying a firearm for the next two years, despite knowing it was unlawful because of his status as a felon.

On May 24, 2021, Deleon and two of his friends approached a smoke shop to gamble—a shop Esparza was known to regularly visit. Deleon told his friends that he had a "beef" with Esparza, so one of the friends went inside the shop first to see if Esparza was there. When Deleon learned no one was in the shop, he and his friends went inside. Deleon entered the shop with a firearm. While Deleon sat at a gambling machine, a man entered the shop, and Deleon drew his firearm. Moments later, Deleon discovered the man was actually Esparza and began shooting at him. Esparza saw the firearm, turned away, and ran out of the shop—away from Deleon. Deleon chased Esparza outside the shop and shot him in the back. Esparza died as a result of the gunshot wound.

3

Deleon and his friends left the scene without waiting for the police to arrive. One month and two weeks later, Deleon was arrested for murder, and he was still in possession of a firearm.

### III. DISCUSSION

### A. DEFENSE OF NECESSITY INSTRUCTION ON COUNT ONE: MURDER

Deleon first complains that the trial court erred by failing to include a jury instruction for the defense of necessity as to Count One (Murder). However, this defensive instruction was not requested by Deleon; therefore, he forfeited the alleged error. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013).

The purpose of the jury charge is to inform the jury of the applicable law and guide the jury in its application in the case, and the trial judge is ultimately responsible for the charge's accuracy. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). The trial judge must ensure sua sponte that all of the law applicable to the criminal offense that is set out in the indictment or information is incorporated into the jury charge, "as well as the general admonishments, including reference to the presumption of innocence, proof beyond a reasonable doubt, unanimity of the verdict, and so forth." *Id.*

Unless a particular statute places a duty on a trial court to give a sua sponte instruction, the trial court generally need not instruct the jury on unrequested traditional defenses and defensive issues because they are not "law applicable to the case." Tex. Code Crim. Proc. Ann. 36.14; *Vega*, 394 S.W.3d at 519; *see Oursbourn v.*

4

*State*, 259 S.W.3d 159, 180 (Tex. Crim. App. 2008). A defendant who fails to ask for an instruction on such an issue, or to object to its exclusion, forfeits the alleged error on appeal; thus, we do not engage in an *Almanza* egregious-harm review. *See Vega*, 394 S.W.3d at 519; *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998); *Almanza v. State*, 686 S.W.2d 157, 171–74 (Tex. Crim. App. 1985) (op. on reh'g); Tex. R. App. P. 33.1.

While Deleon requested the trial court to include an instruction for self-defense on Count One (Murder), he did not request an instruction for the defense of necessity.[2] The trial court clarified Deleon's requested instructions, and Defense counsel confirmed his specific requests: an instruction for self-defense on Count One and an instruction for necessity on Count Two. The trial court ultimately denied both of Deleon's requests. Following the ruling on Count One's request, Deleon did not subsequently request a necessity defense instruction for Count One, nor did he object to the absence of the instruction in the jury charge.

Because Deleon did not request a necessity defense instruction for Count One, it was not law "applicable to the case," and the trial court was not required to give a sua sponte instruction to the jury on the defense of necessity. *See Posey*, 966 S.W.2d at 62. Therefore, since Deleon did not request this instruction or object to its

---

[2]The trial court denied Deleon's request for a jury instruction on self-defense for Count One, but he does not complain of that issue on appeal.

5

exclusion, he forfeited the alleged error as to Count One.  *See Vega*, 394 S.W.3d at 519.  Accordingly, we overrule his first issue.

## B.  DEFENSE OF NECESSITY INSTRUCTION ON COUNT TWO: UNLAWFUL POSSESSION OF FIREARM BY FELON

Deleon next complains that the trial court erred by not including a jury instruction for the defense of necessity on Count Two (Unlawful Possession of Firearm by Felon).  This instruction was requested by Deleon, but the trial court denied his request.  We hold that Deleon was not entitled to this instruction; thus, the trial court did not err in denying his request.

Generally, a defendant is entitled to a jury instruction on every defensive issue raised by the evidence.  *Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008).  A defense is supported or raised by the evidence "if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true."  *Shaw v. State*, 243 S.W.3d 647, 657 (Tex. Crim. App. 2007).  The defendant bears the burden of showing some evidence exists to support each element of the defense.  *Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010); *Shaw*, 243 S.W.3d at 657–58.  When reviewing a trial court's decision to deny a requested defensive instruction, "we view the evidence in the light most favorable to the defendant's requested submission."  *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).  However, a trial court may refuse an instruction on a defensive theory if the issue was not raised by the evidence.  *See Shaw*, 243 S.W.3d

6

at 657–58. Deleon argues that the evidence raised the defense of necessity. We disagree.

Under the defense of necessity, conduct is justified if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

Tex. Penal Code Ann. § 9.22.

The invocation of a necessity defense requires evidence of *both* immediate necessity and imminent harm, and if corroboration in support of either of these elements is lacking, the trial court does not err by excluding the defense. *See Stefanoff v. State*, 78 S.W.3d 496, 500–01 (Tex. App.—Austin 2002, pet. ref'd).

The defendant is required to bring forth evidence of a specific imminent harm. *See Id.* at 500 (citing Tex. Penal Code Ann. § 9.22 (1)); *Pennington v. State*, 54 S.W.3d 852, 857 (Tex. App.—Fort Worth 2001, pet. ref'd). "Harm is imminent when there is an emergency situation, and it is 'immediately necessary' to avoid that harm." *Pennington*, at 857; *Bobo v. State*, 757 S.W.2d 58, 63 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (stating that a suggestion of the possibility of harm will not suffice to support a necessity defense). "'Imminent' means something that is impending, not pending; something that is on the point of happening, not about to happen."

7

*Pennington*, 54 S.W.3d at 857. "Evidence of a generalized fear of harm is not sufficient to raise the issue of imminent harm," and the mere possibility that harm may occur does not support the necessity defense. *Brazelton v. State*, 947 S.W.2d 644, 648 (Tex. App.—Fort Worth 1997, no pet.); *Beckstrend v. State*, No. 02-12-00480-CR, 2015 WL 1544077, at *6 (Tex. App.—Fort Worth Apr. 2, 2015, no pet.) (mem. op., not designated for publication).

A defendant must also establish facts indicating a reasonable belief that the criminal conduct was immediately necessary to avoid the imminent harm. *See Stefanoff*, 78 S.W.3d at 501. "Reasonable belief" means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor. *See* Tex. Penal Code Ann. § 1.07(a)(42). Reasonableness is determined from the defendant's viewpoint at the time of the conduct. *See Stefanoff*, 78 S.W.3d at 501. A defendant's sincere belief that his conduct is immediately necessary to avoid imminent harm is unreasonable as a matter of law if the undisputed facts demonstrate a complete absence of "immediate necessity" or "imminent harm." *Dewalt v. State*, 307 S.W.3d 437, 454 (Tex. App.—Austin 2010, pet. ref'd).

At trial, Deleon expressed a generalized fear of Esparza, and he possessed a firearm as a felon for an extended period of time. The evidence did not demonstrate Deleon's firearm possession was an "immediate necessity" to avoid "imminent harm." *Id.*

8

### 1. Generalized Fear

Deleon's evidence demonstrates a generalized fear of Esparza. Deleon cites *Vasquez v. State* in support of his argument for the inclusion of a necessity defense instruction. 830 S.W.2d 948, 950 (Tex. Crim. App. 1992). In *Vasquez*, the appellant was similarly charged with possession of a firearm by a felon. *Id.* at 950. At the time the appellant possessed a firearm, he had just escaped from being kidnapped and was still pursued by his assailants. *Id.* He faced an identifiable, imminent harm, and the Court of Criminal Appeals held that given the circumstances, he raised the issue of necessity. *Id.*

The facts of imminent harm in *Vasquez* differ from the facts of this case, as Deleon was not held captive, pursued, or immediately threatened at the time he was inside the smoke-shop. We addressed the issue of generalized fear in *Miller v. State*, and the *Miller* facts are analogous to Deleon's circumstances at the time he possessed the firearm inside the smoke-shop. No. 02-11-00155-CR, 2013 WL 362792, at *8 (Tex. App.—Fort Worth Jan. 31, 2013, no pet.) (mem. op., not designated for publication).

In *Miller*, the appellant was robbed one month prior to his arrest for unlawful possession of a firearm by felon. *Id.* at *8. The appellant testified that the robbery caused him to be fearful, and he began carrying a firearm for safety. *Id.* at *6. On the day of his arrest, he entered a business while in possession of a firearm because the location was known to commonly host people who he suspected of having had a role

9

in his robbery. *Id.* at *8. We held that the evidence at trial merely demonstrated that the appellant possessed a generalized fear and that there was no evidence he was facing imminent harm when he possessed the firearm. *Id.* at *9. Because the undisputed facts demonstrated that there was no imminent harm, the appellant's belief that possessing a firearm was immediately necessary to avoid the perceived harm was unreasonable as a matter of law. *Id.*

The issue turns on imminent harm. Deleon testified at trial that he feared Esparza would retaliate against him for the 2019 shooting. Deleon's concern stemmed from his personal knowledge that Esparza retaliated against other people, often carried a firearm, and went to prison for a violent offense. Deleon presented evidence of a generalized fear of Esparza, but the fear posed was a mere possibility of harm. *Bobo*, 757 S.W.2d at 58.

Deleon explained that due to his ongoing fear of Esparza, he "always [had a firearm] for protection." Yet, at trial, Deleon was unable to provide a specific, articulable threat posed by Esparza on the day of the smoke-shop shooting that would justify the immediate necessity of possessing a firearm inside the shop to avoid imminent harm. *See Dewalt*, 307 S.W.3d at 454. Deleon testified that before encountering Esparza inside the smoke-shop, he possessed the firearm in a vehicle absent any immediate threat, and he did not anticipate that Esparza would walk inside.

Esparza's entry into the shop similarly does not support Deleon's contention that he faced imminent harm. Upon Esparza's entry, he did not make any threats or

exhibit a firearm, and he began running away after Deleon started shooting. On cross-examination, Deleon was asked whether Esparza was a threat, and he denied the existence of an imminent threat while possessing the firearm inside the shop.

Q. No. He makes no threats. He says nothing to you; correct?

A. Yes, sir.

Q. All right. You have pulled the gun; he is running away. That's what we see; right?

A. Yes, sir.

Q. Okay. He's not a threat. Not a threat, and running away. You have already pulled the gun out and began shooting him; correct?

A. Yes, sir.

. . . .

Q. Okay. So at this moment he has not threatened you. Right now, in this moment, there are no threats to you, correct?

A. No.

Q. Okay. No imminent threat. You're still in possession of a firearm, right?

A. Yes, sir.

Deleon's evidence demonstrated that he possessed a generalized fear of Esparza. However, despite Deleon and Esparza's living in the same general area, there was no evidence that Deleon faced "imminent harm." *See Johnson v. State*, 650 S.W.2d 414, 416 (Tex. Crim. App. 1983), *overruled in part on other grounds by Boget v. State*, 74 S.W.3d 23, 31 (Tex. Crim. App. 2002) (holding that a feeling that one is in a

11

"high crime" area would not constitute a reasonable belief that unlawfully carrying a weapon is immediately necessary to avoid imminent harm); *Garcia v. State*, 972 S.W.2d 848, 849 (Tex. App.—Beaumont 1998, no pet.) (holding the fact that one must go in harm's way does not create an immediate necessity to avoid imminent harm). Deleon's decision to enter a smoke-shop that Esparza was known to frequently visit did not constitute a reasonable belief that it was immediately necessary to unlawfully possess a firearm.

We conclude that Deleon failed to present evidence that he encountered an "emergency situation" necessitating a "split-second decision made without time to consider the law." *Dewalt*, 307 S.W.3d at 456. In *Miller*, we held it was unreasonable for the appellant to possess a firearm for thirty days after he was robbed. 2013 WL 362792, at *8. Here, Deleon continually possessed a firearm for two years after he initially shot Esparza, and it is similarly unreasonable. Under Deleon's rationale for the defense of necessity, he would be in perpetual, imminent danger and justified in his unending possession of a firearm. We disagree with this logic.

Because the record demonstrates that Deleon possessed the firearm due to a generalized fear to avoid a potential, future harm by Esparza, his belief that possessing a firearm was immediately necessary to avoid a perceived "imminent harm" was unreasonable as a matter of law. *See Dewalt*, 307 S.W.3d at 454; *Trove v. State*, No. 03–04–00578–CR, 2007 WL 3390874, at *5 (Tex. App.—Austin Nov. 14, 2007, no pet.) (mem. op., not designated for publication) ("There is no evidence of imminent harm

12

or of a reasonable belief that immediate action was necessary to avoid imminent harm.").

## 2. Extended Possession

Deleon possessed a firearm for an extended period of time—preceding and subsequent to Esparza's death. In *Conn v. State*, we addressed the issue of extended possession of a firearm by a felon. No. 02–12–00616–CR, 2014 WL 2809062 (Tex. App.—Fort Worth June 19, 2014, no pet.) (mem. op., not designated for publication). We held that when a defendant possesses a firearm for an extended period of time, not just in those moments he felt himself in imminent danger, he is not entitled to a necessity instruction. *Id.* at *2.

At trial, Deleon testified that he "always" possessed a firearm for his protection. Specifically, he "couldn't leave nowhere without a gun." Deleon's possession of the firearm preceded his smoke-shop interaction with Esparza and extended for over one month following Esparza's death.[3] Taking Deleon's defensive

---

[3]Deleon was indicted for unlawful possession of a firearm not just for the moment he had it inside the shop but at any time "on or about" May 24, 2021—the alleged day of that shooting. "It is well settled that the 'on or about' language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period." *Sanchez v. State*, 400 S.W.3d 595, 600 (Tex. Crim. App. 2013). At trial, Deleon did not request the State to elect the occurrence of possession on which it sought a conviction. By his own testimony, Deleon possessed the firearm for two years before the murder and one month and two weeks after the murder. Therefore, the jury could have found any instance of his admittedly unlawful possession that was anterior to the presentment of the indictment as a basis for his conviction. *Id.*

13

theory into consideration, any imminent harm posed by Esparza ceased upon his death.  Yet, Deleon's extended possession of a firearm is absent any articulable imminent danger and contradictory to his claim of necessity.

Viewed in the light most favorable to Deleon's requested instruction, the evidence did not raise the necessity defense, and he was not entitled to the instruction. *See Washington v. State*, 152 S.W.3d 209, 211–13 (Tex. App.—Amarillo 2004, no pet.) (holding necessity instruction not warranted in prosecution for unlawful possession of a firearm where appellant argued that he removed his grandfather's gun from the coffee table and put it in his pocket before children due home from school would find it).

Because he was not entitled to the instruction, we hold that the trial court did not err in refusing Deleon's requested jury instruction as to Count Two.  *See Washington*, 152 S.W.3d at 211.  We overrule his second issue.

## IV. CONCLUSION

Having overruled Deleon's two issues, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  February 6, 2025

14